11-08 Thomas A. Fox v. Saginaw County MI 11-08 Thomas A. Fox v. Saginaw County MI Good morning Your Honor. Excuse me. Good morning. Good morning. Matthew Nelson on behalf of the county defendants. I'd like to reserve five minutes for rebuttal. Certainly may. This case may have pleased the court. This case is beyond the bounds the Constitution imposes on federal courts. Mr. Fox has no justiciable controversy against 26 of the 27 county defendants because he's not been injured by them. And the former property owners in these counties and the counties ought to be able to resolve their disputes among themselves, either in court or through the newly enacted statutory procedure under Michigan law, that's Michigan compiled laws section 211.78T, which the legislature has now enacted to create a process by which former property owners can obtain surplus proceeds from the sale of their tax foreclosed properties under the Raffaele decision. This morning, I intend to focus on the standing issue and leave the remaining issues to the briefing unless this court has questions. And as to the standing issue, I'd like to address four points. First, that this court must actually like to hear some analysis on this sovereign immunity issue. Why do you say what is it that satisfies the multi-part test for assessing whether you're an arm of the state for purposes of sovereign immunity? So, Your Honor, the parties in the district court did not address the multi-part test. It was inserted into this case on appeal. I think when you look to the multi-part test, there are, obviously the county is a separate entity from the state and I think- And obviously normally does not partake of immunity. Normally does not partake of immunity. And with regard to what I think, with regard to the who would be liable with regard to a judgment here, I think you would, I think we would all have to concede that the counties would be liable unless the counties went into bankruptcy, in which case there would be some question. Ultimately, that issue wasn't raised because instead the district court and the parties addressed the other multi-factor test, the Brotherton, identified in Brotherton and then subsequent cases with regard to whether there was sufficient discretion exercised. And there, Your Honor, we would point out that we believe the district court erred by addressing the wrong decision. The plaintiff here is master of the complaint and the plaintiff has here challenged the decision not to refund surplus proceeds with regard to each of these properties. Under state law at the time, the counties had no opportunity to do so. State law prohibited it. Hasn't the challenge the whole participation? I mean, the argument is you didn't have to be the one collecting these taxes. That was a discretionary choice. I'm looking at whether, you know, the functions that are normally done by the county, it seems to me that there is discretion at two particular spots, both in selecting to be the one that collected the taxes and in choosing the properties on which the taxes were collected. I mean, those are the leading issues that bring this case before us, aren't they? And aren't those discretionary rights of the county? So, Your Honor, with regard to taking them in turn, with regard to participating in the foreclosure statutory scheme as the foreclosing governmental unit, the statute actually provides that unless the counties opt out, they must participate in this scheme. And who does that grant the discretion to act to? In 1999, it granted the discretion to the counties to opt out. However, the issue here isn't, the challenge here isn't to the foreclosures themselves, which is the entire process up to this point. It's specifically with regard to one aspect at the end of this process. And so if we are, the question here is most certainly what level of magnification, you know, are we looking at this with a telescope or with a microscope? I'm struggling with that argument because they couldn't be in the fourth step if they hadn't twice exercised their discretion to choose, one, to actually foreclose, and two, to not tell the state, no, you foreclose. Judge Stretch, I think that there is, frankly, not terribly much discretion with regard to the decision to foreclose, although there is some. However, and at the end of the day, I mean, I think this is our best argument, that the issue is that's being challenged here, the decision that's being challenged, the conduct that's being challenged, like the conduct being challenged in the previous cases of this court, the discretion is assessed at the time of the decision that's being challenged. The plaintiff identifies what that decision is, and then the court should proceed to assess discretion at that level. But, Your Honor, I think even before we get to the sovereign immunity point, I think this court has an obligation to address both standing and subject matter jurisdiction. And if I may, I'd like to pivot to that to address four points. First of all, that this court does, in fact, have an obligation to address subject matter jurisdiction. There has been some question that because this is a collateral order doctrine appeal, could the court simply avoid addressing subject matter jurisdiction? And I think Steele Company definitively establishes the answer to that question is no. And this court has, in fact, applied, has addressed subject matter jurisdiction challenges in the context of preliminary injunction appeals. The rule should be the same here. The rule in Steele Company that the Supreme Court was looking to, the situation that in Steele Company the court was looking to avoid, was a situation where the court addresses an issue where there's no justiciable controversy and consequently there's an advisory opinion. That's precisely the risk that occurs here as to the 26 counties as to which there's no injury. It seems to me that you argue that you've got to start with standing. The other side argues the law says you can begin with class certification. It seems to me that there may be some discretion within the district court itself in determining where to begin. I mean, would you tell me that the district court is barred from beginning with class certification? With regard to if there's a question to subject matter jurisdiction, I think Steele Company stands for the proposition that you have to address subject matter jurisdiction first. Now, what the Seventh Circuit and Brother Counsel have identified in terms of suggesting to the contrary are two cases from the Supreme Court, Ortiz and Amchem. And in both of those cases, the Supreme Court addressed class certification before standing because the issue in standing was whether other class members, not the class representative, had standing. And that was logically after the class certification decision. But here, even as Fletcher, a Fifth Circuit case that Brother Counsel cites in their briefing, points out where the question is class certification of the class representative, you have to address standing at the outset. And that is because standing is a cradle-to-grave requirement. And if there's ever a point in time where there's no standing, the federal courts are without the authority to address the case. There's no jurisdiction. Well, then, I guess it is an interesting interplay. There's no question that it's an interesting interplay. But it seems to me that if the court has begun with the class certification, the first question is whether the class representative has any standing in the case. And you would concede that Fox has standing as to at least one county, right? As to Gratiot County, correct. Right. And isn't it the prerogative of the court to manage the case in the way that it determines is appropriate? And I'm struggling with working out those two ends because we know that a district court that certifies a class maintains its overview of that class throughout the litigation. And that if there are problems within the class, the court may address them, the plaintiff may move to subclass, or the court may suggest subclassing, which might entail additional class representatives. So why doesn't that inherent authority of the court also answer your question about the propriety of the interplay between a class case and a standing question? Because under Article III of the Constitution, there is no inherent authority to adjudicate any sort of claim in any fashion or even to entertain the claim if there's not a justiciable controversy. And in Fallick, this court has indicated, consistent with numerous other decisions, that at the beginning of the case, the plaintiff has to establish standing as to each defendant. And that most certainly was not the case here. With regard to the issue of subclasses and the like, if there had been additional plaintiffs who had standing as to the other counties, we may have been in a position here where at some point we'd be arguing about joinder, but it wouldn't be an issue of standing. But because there's only one plaintiff and because he wasn't injured by the other defendants, there's no justiciable controversy and the federal courts just simply don't have the authority to address the dispute. I see my time has expired. I thank you for that. Thank you. You'll have your rebuttal time. Good morning, Your Honors. Philip Ellison appearing on behalf of Mr. Fox's epilee and the more than 9,000 class members that are currently before the class case before the Eastern District of Michigan. Your Honors, this morning I think what we're seeing, and Judge Stranz I think the problem you're having is that my brother counsel is trying to put a round peg into a square hole. The juridical link doctrine is a joinder tool, not a standing tool. And the reason I would like to get the court to think about this in terms of reframing it in a different thinking pattern here this morning. When a case is filed, we determine whether a person has stand or whether plaintiffs have standing by knowing first who are the plaintiffs, who are at the plaintiff's table for the court to then conduct the standing analysis. Right now, before a class certification is decided, we don't know who the plaintiffs are, what the complete scope of everyone who is sitting at that plaintiff's table. Once we know who is at that plaintiff's table, then the court is in a position to decide, and I think Judge Stranz you put up a very interesting point about having some discretion in this respect, is then does the members of those class have standing against the defendants who have been sued. That's why the Supreme Court said in both AMCAM and Fiberboard, the logical antecedent to the standing question is class certification. And it makes perfect sense because you've got to know who the plaintiffs are before you can analyze whether they're standing against the defendants. Now, courts, and this court, as many others do, sometimes skips over step one and step two because there's a positive answer at step three in a particular case. But that doesn't mean that you have to, that means the court has to decide step one and step two before reaching step three. Here, the district court did it the right way. He decided the class certification first as logically antecedent, determined who the plaintiffs were, which in this case is over 9,000 plaintiffs, and then decided whether or not those plaintiffs had a cause of action against the defendants. In fact, found at least four causes of action that exist when he denied, in large part, their motion to dismiss and allowed the case to continue. So we have to think about this in terms of, and I use kind of the analogy of the image, who's sitting at the plaintiff's table? You have to know who's there before you can decide whether they're standing against the defendants in that respect. So I would ask the court to treat the juridical link doctrine issue, if you can even reach that, and I'll get to that in just a second, as a joinder doctrine, not a standing doctrine going forward. Well, assuming it is, then you join all these people within the class because you do have one class representative. Correct. But then what happens when you get through that juridical link in the class certification context and you have to address your opposing counsel's argument that now you have to have standing? That's correct, and I think there's no dispute here. If all 9,000 members of our class are, and I use it figuratively, at the plaintiff's table, they have not offered any evidence to suggest or any argument to suggest that the people that have been harmed by the counties that have been sued are, in fact, there's no standing. The members of the class are only the individuals of the counties for whom we are suing in that respect. There's about 30 counties in this particular case. Well, their argument would be you must have a named representative as to the defendants in order to have standing. But no court has ever held that because, again, when we came to the court, our filing of our complaint is trial court judge, our plaintiffs are 9,000 members of all of these counties. The court has a gatekeeper role to say I'm not going to allow all 9,000 plaintiffs to be at the plaintiff's table, and that's the Rule 23 process. Well, what about the cases that suggest that you cannot manufacture standing through the vehicle of a class action? That's true, and I think what those cases are trying to highlight is that you can't have a class rep who doesn't have an injury that's similar to others in the same field. And what that goes to, and I think that goes to the adequacy issue. It would be whether the named plaintiff is adequate to serve as the representative on behalf of all of these individuals if they've had the same, whether it's the same injury, the same type of injury, there would be an appropriate individual in that respect. What my brother counsel is trying to do is to say you've got to have someone from every county. The problem is we do have someone from every county. Once the judge certified, and again, this is the language from Amchem and Fiberboard, once you have the logical antecedent question of deciding who's at the plaintiff's table, then we do an analysis to determine whether or not, in fact, there is standing between the plaintiffs that are there and the defendants that are on the other side of the courtroom. Do the standing cases or the class action cases not distinguish between those who would have standing to be involved in the claim, which is completely the same across all of these counties? So is the question whether that person must have, you must have a person with standing as to each of those, but each representative must not necessarily have standing as to each other county. You see what I'm saying? That I would say you would agree with. They do not have to have, Mr. Fox does not have to also have standing for the other 26 counties, but that's not the question here. The question here is whether there has to be, following the class certification and the recognition of a juridical link between all of these counties and the problems suffered by everybody in the class, which is indisputably a state statute, all of the components that you would look to to determine whether these people ought to be in one ball. They ought to be addressing it together. But there's a question after that. Your opposing counsel argues that not only must they have that, but you must have a representative, a named representative out of the group of people in each county so that each named separately defendant also has a named representative plaintiff. Now, the ultimate outcome of that is doesn't the court control that? And can't the court subclass this? And can't people be named and move forward? Yes, absolutely. Absolutely. And that's one of the ñ this is almost kind of a silly argument here. And I don't mean to disrespect. That's kind of a silly argument from my opposing counsel is because if by chance you say you've got to have a plaintiff from every county, we're just going to on remand add a plaintiff from every single county in this respect. But I guess the key here, though, is that the whole purpose of juridical link because, again, I would point out to this court there are two Lamar exceptions. There is the conspiracy, you know, joint scheme, joint conspiracy prong, which is what most of the insurance company, private insurance company cases are dealt with. We're under the second prong. And one of the things that strikes me as I was going through the cases is we have almost perfect anonymity across the entire body of law in every circuit that says when you have one, basically one law, one uniform law that's in a state, we can combine all these together so that the district court in this case doesn't have 9,000 to 10,000 individualized cases that are pending before it. And for the same reason that you have a class action. Correct. Because all those people do not have the wherewithal individually to litigate the issue. That's correct. Especially if for some folks, I will bet some folks have lost lesser amounts of money than others. I mean, there's a range of dollar amounts. But a dollar, of course, a dollar amount difference doesn't defeat a class. But it's the same exact pattern in every single case, in every single circumstance, which the court can easily adjudicate and easily maintain. And if for some reason we fail in our obligations to show this court at some point down the line that these are in fact a uniform law or a uniform process, the district court still has the ability to decertify or to otherwise redefine the class at the request of the defendants there. And so the question is, do we just get through the courthouse door? And again, it gets me back to where I start from, which is juridical link is a joinder doctrine, not a standing doctrine. And that's why I think the AmChem and Viber board are so incredibly important because it directs trial courts to say you should decide class certification first. But I've seen cases in my travel and other circumstances. We're going to jump over the first issue and second issue because there's a dispositive decision that can be on step three. And why do you think Steele does not bar that? Well, because Steele deals with one plaintiff and one defendant in an issue about whether they're standing that way. Essentially, it would be a challenge if Mr. Fox had had his home foreclosed on by an Ohio county, for example. There would be no standing as to him suing Gratiot County in that respect. Steele just defines, I think, what the standing obligation is for plaintiffs, generally speaking, not for this unique class situation. Because again, once we get the class together, sitting literally at the plaintiff's table are 10,000 plaintiffs once class certification has been issued. And doesn't that need to be done expeditiously? Because I think all of us would agree there is no reason to go through this whole process and then litigate after a trial, after a decision, litigate whether they're standing. Well, the problem that we run into is that this court, the closest case we have is a case called Haynes v. Marshall. And Haynes v. Marshall is a question as to whether or not this court has jurisdiction to decide, or I should say, to review whether it in fact has Article III standing to essentially, does that jurisdiction apply? Yes, at this stage. There is a real question with that. I think there's 1290, I mean, clearly, under the collateral order rule, as for sovereign immunity based on the Supreme Court's decision on this, yes, it does. What my brother counsel has craftily done, and it almost gets missed when you drive by it, is he's not challenging this court's jurisdiction, he's asking this court to review the trial court's ability for jurisdiction. And that would be a collateral order. No court has held that the appellants, in this case, can bring a subject matter challenge as a collateral order to this court. And in fact, Haynes holds the opposite of that. Haynes says that a denial of a motion to dismiss on lack of jurisdiction is something you deal with after the final order is entered in the case. And they have not asked, and they have not sought, for this court to create that as a new collateral order, which, even if they did, it would be almost an impossible task because the standard for collateral orders, of course, as the Supreme Court has told us, it has to be very narrow, it has to be basically impossible for you to raise that defense or that issue at the end of the case, which that would not be the case with a subject matter jurisdiction aspect. I want to switch gears. I'm running close on time here. As to sovereign immunity, if I could pivot to that for a second. Sovereign immunity, it's the black-letter law and a well-established law that counties don't enjoy sovereign immunity. They're separate, distinct creatures. This court has said it in McNeil recently. They've said it in Irving. The U.S. Supreme Court said it in Mount Healthy Schools. They are not an arm of the state. Now, there is an exception to that. One exception is if, and only if, the state has directed the local counties that you shall do this and you have no discretion in this respect whatsoever. Judge Strantz, I can't really add anything more other than what you went back and forth with my brother counsel on. There is two levels of discretion here that exist. They didn't raise the second one below. What they only raised here was is that the argument that they said there was no 11th Amendment, meaning we pointed out you exercise discretion. And one thing I do take umbrage with my opposing counsel on is that he said, well, we were forced to decide whether we wanted to opt out. That's not true. They were given the option to opt in, not opt out. The state says we will handle this foreclosure process unless you affirmatively decide to opt in to administer the program. And if you do, guess what, you get to keep all the money on this. And what's important is under Michigan law 211.78, sub 3 through sub 6, that was a decision that had to be affirmatively made by the Board of Commissioners of that county and had to have the concurrence of the local county treasurer. So if either one of those, which are the top, top policymaking decision bodies for Michigan counties in this respect, those two had affirmatively agreed. And once you cross that threshold right there, you are in the category of exercising county policy, not state policy. I think the sovereign immunity argument here is extremely weak. And I think what this was was a backdoor attempt to try to get the juridical link question before you as opposed to a real, true, and honest sovereign immunity question that exists. Unless the court has any other questions, I would ask the court to simply, I guess as kind of our best case scenario for us, decide the sovereign immunity question and define that there is no ability to hear the subject matter jurisdiction challenge under the juridical link. But if you're going to address that, we believe we've established that by juridical link being a jointed doctrine, not a standing doctrine. Thank you. Okay. Thank you, Counsel. Mr. Nelson. Thank you, Your Honors. Let me jump right in there. With regard to the juridical link doctrine and the need for this court to make a decision on it, first at a practical level, the parties need the court to decide the juridical link doctrine because, frankly, if there is no subject matter jurisdiction over this case and we litigate it to the end, the entirety of the judgment goes away. All the people who are depending on this for resolution are stymied, and all of them outside of Gratiot County have been prevented from being able to reach this resolution. If the court strongly feels, and I think it would be wrong, but if the court were to conclude that it couldn't reach the issue under the collateral order doctrine because of that it couldn't reach that issue, the court also has the opportunity to reach the issue with regard to the orders that were referred to this court by the motions panel under Rule 23F where the subject matter jurisdiction issue is squarely presented. I would note that the motions panel there indicated that the juridical link doctrine is central to this case, so at least it appears the motions panel thinks that. You would concede, wouldn't you, that the district court has inherent authority under our class case law to manage the class itself. Isn't that correct? Yes, Your Honor. And if the court determined that subclasses were necessary, which is not an unusual middle of the litigation event to occur, and that those classes needed a named representative, why wouldn't that resolve this whole issue? Your Honor, the reason it wouldn't resolve this whole issue is because the case started out without a justiciable controversy. No, it started out with a justiciable argument for Mr. Fox for one county, and that was the genesis of the determination whether the other counties were also linked by the classic issue. State statute applies to everybody, works the same way. So that determination has been made. So the question becomes if now that is resolved, if the court did that and had subclasses with individually named class representatives, why wouldn't that solve the problem in the case? Because, Your Honor, the court can't take the approach that you're proffering, and this is why. If this case, imagine if this case was just, it wasn't asserted as a class action. It was just asserted as Mr. Fox individually against all of the 27 counties. I don't think there would be any question that there would be no standing as to the other 26 counties, and as to those 26 counties, they would have to be dismissed. If I'm correct about that, then the line of cases from Spokio all the way back to Worth v. Selden that say that the fact that a claim is being asserted as a class action does not vary the standing analysis means that this court has to apply the exact same analysis at the outset of this case, which is to say that you have to ignore the fact that there's a class being pled and you have to look at the complaint and say, is there a justiciable controversy between Mr. Fox and the other 26 counties? If it's something else, I don't know how that could be possibly squared with Spokio going back to Worth v. Selden, all these cases that say the fact that it's being pled as a class action doesn't change the standing analysis. I think fundamentally the question becomes, at what point do you address that standing analysis? And if you addressed it post-subclassing and named representatives, then they would have standing. So your argument would be we've got this early time frame in which you didn't, so you've got to dismiss everybody and bring them back in in the class with the named representatives. Your Honor, either yes, the answer is yes, that has to be how it's done, because Article III justiciability has to be established from the beginning of the case to the end of the case. This case, this court has referred to Article III jurisdiction as a cradle-to-grave requirement. And I think that's the Hravnik case. It's a cradle-to-grave requirement. There isn't a justiciable controversy at the beginning. That could have been handled by having multiple plaintiffs at the beginning. Then we'd have potentially some joinder issues. It could be handled after class certification, but with an attempt to file an amended complaint with class representatives as to other counties. But it cannot be handled in the fashion that it currently has been because there's a gap in justiciability. And where there's a gap in justiciability, the federal courts don't have the authority to address the issue. If I may, I'm sorry, I'm out of time. I would like to address Ortiz and Amchem very briefly. Why don't you take 30 seconds? Thank you, Your Honor. With regard to Ortiz and Amchem, I think there's a fundamental misunderstanding of what happened in those cases. Those cases were asbestos cases, and in the asbestos case situation, there was an issue of certifying classes for people who might in the future have an injury. Frankly, the courts talked about it as being a very novel and creative solution, but unfortunately barred by potentially there were problems with Article III standing. But those Article III standing issues only arose because of the class certification. If there hadn't been a class certification, then that standing issue doesn't arise. Here, the issue is the opposite. And this is why the court is not free to defer until after class certification to address standing. Here, the issue is does the class representative have standing as against all defendants? And because he doesn't, we're in this situation. I have just one question since we're extending. It sort of gets completely overlooked in this case that essentially, and correct me if I'm wrong, but a person has property, owes delinquent taxes, you're entitled to foreclose, and as a mandate of state law, if you get more money than the debt that's owed, you keep the money. That's that simple, isn't it? So that's now become a law school final exam, although it's relatively simple, because if a court of last resort agrees with the plaintiff under some theory that that's a taking or whatnot, it's not like a case where you're injured by an implant or something in which each individual's health and everything has to be considered. Every one of those other plaintiffs is in the identical situation. You've kept money that they say belongs to them. Whether these cases would be settled or whatnot, but it seems it's got unnecessarily complicated the way you're going about it, and I don't mean you necessarily, but it's a relatively simple situation, isn't it? Your Honor, there is some significant complexity sort of at the back end that's not been addressed yet in the courts with regard to properties where there are multiple interest holders in the property at the time of foreclosure and some other issues. But in terms of the legal issue itself, yes, the Michigan Supreme Court has resolved that legal issue in Raffaelli, but with regard to there's certainly a sort of gut-level efficiency appeal to doing this the way that the district court did, but the fact of the matter is Article III overcomes efficiency issues. I mean, we have a divided, you know, there's the first three articles of the Constitution set up the way they are that's against efficiency because we want to have that sort of checks and balance, and so I would therefore appeal to this court to reverse the district court's ruling and remand to dismiss the case. Okay. Well, thank you, counsel. Obviously a very interesting case. I appreciate your arguments this morning, and we will take the case under advisement. I think that completes our morning argument docket, so you may adjourn court.